NANCY STEFFEN RAHMEYER, J.,
dissenting.
I must respectfully dissent. Although the majority opinion states that our analysis is de novo because the trial court decided the motion on stipulated facts, in actuality the court conducted a hearing and reviewed exhibits, including the depositions and reports of the police officers.
Where a trial court has granted a defendant’s motion to suppress, we review the trial court’s decision on appeal under an abuse of discretion standard. Only if the trial court’s judgment is clearly erroneous will an appellate court reverse. Review is limited to determining whether the decision is supported by substantial evidence. In making that determination, the facts and reasonable inferences from such facts are considered favorably to the trial court’s ruling and contrary evidence and inferences *819 are disregarded. We defer to the factual findings and credibility determinations made by the circuit court, remembering that the circuit court may choose to believe or disbelieve all or any part of the testimony presented by the State, even though it may be uncóntradicted, and may find the State failed to meet its burden of proof,[] The weight of the evidence and the credibility of the witnesses are for the trial court’s determination.
State v. Avent, 432 S.W.3d 249, 252 (Mo.App.W.D.2014) (internal quotations and citations omitted). In a footnote the court noted:
4 “Under the ‘clearly erroneous’ standard of review, the trial' court’s findings of fact are entitled to deference even where they are based on physical or documentary evidence which is equally available to an appellate court.” State v. Williams, 334 S.W.3d 177, 181 (Mo.App.W.D.2011). “ ‘Even where the trial court’s decision was based solely ‘on the records,’ we defer to the trial court as finder of fact in determining whether there is substantial evidence to support the judgment and whether the judgment is against the weight of the evidence.’ ” Id. (quoting State v. Abeln, 136 S.W.3d 803, 808 (Mo.App.W.D.2004)).
Id. at 252 n. 4.
The court asked questions at the hearing of counsel:
[Court]: Let me ask counsel this question. I think it may be relevant as the Court tries to determine the meaning of the defendant’s reported assertion of the right to counsel and the context of it and whether or not it is clear and unequivocal. I think in evaluating the impact of the defendant’s words it is important for the Court to understand if that was in response to a specific request or a specific question, how close in time the question was to a statement made by the defendant. Do you all have a stipulation as to that?
[Prosecutor]: It was immediate.
[Defense counsel]: It was immediate even upon the, you know, I am reading you your Miranda rights, will you sign a consent to search form, I ain’t signing shit without my attorney.
The court ended the hearing by stating, “That is a fact question.” Defense counsel replied, “Yes, sir.” From that hearing and review, the trial court stated:
This court must determine if Defendant stating, “I ain’t signing shit without my attorney” in response to the deputy’s request that Defendant sign a form giving consent to search precludes law enforcement from initiating further questioning of the Defendant before counsel is made available to the Defendant.... [review of the pertinent law]....
In this case, Defendant achieves the requisite level of clarity. The phrase “I ain’t signing shit without my attorney,” uttered in response to the reading of Miranda rights and the request to sign a form giving consent to search Defendant’s home, clearly indicates that the Defendant does not wish to engage with the police without counsel.- Without question, the Defendant invoked the right to counsel in regard to the requested consent to search and any other matter that would require his signature. Colloquially, the phrase “I ain’t signing shit without my attorney” more likely indicates that Defendant won’t consent to -anything without the benefit of. legal counsel. Caselaw requires a broad, rather than narrow, interpretation of a defendant’s request for counsel. Oregon v. Bradshaw, 462 U.S. 1039, 1041 [103 S.Ct. 2830, 77 L.Ed.2d 405] (1983); Edwards at 479 [101 S.Ct. 1880]; Connecticut v. Barrett, 479 U.S. 523, 529 [107 *820 S.Ct. 828, 93 L.Ed.2d 920] (1987). In Connecticut, the U.S.- Supreme Court held that interpretation is required only where defendant’s words, understood as ordinary people.would understand them, are ambiguous.. In this case, there is no ambiguity that Defendant was invoking the right to counsel.
The State asserts there is an ambiguity surrounding the extent of Defendant’s invocation of the right to counsel, i.e., the Defendant asserted the right to counsel as to his consent to the search of his home only. Again, the general rule in such an instance comes from Edwards and its progeny: “[a]n accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.” ' The only cases provided to the court recognizing conditional or limited invocations of the right to counsel appear restricted to situations where the accused clearly, proactively, affirmatively enunciates the conditions under which they are not invoking the right to counsel. Connecticut at"529-530 [107 S.Ct. 828]; State v. Hunter, 840 S.W.2d 850 (Mo. banc 1992). In Connecticut, the accused clearly articulated he was willing to give an oral statement without counsel. Connecticut at 525 [107 S.Ct. 828]. In Hunter, the' accused clearly articulated he was willing to talk to law enforcement without' an attorney if no reward money was being • offered. Hunter at 870. In this case, the Defendant did not affirmatively pronounce any exceptions to his invocation, thus the ambiguity must be construed in favor of a broad-invocation of the right.-
The subsequent interrogation was not initiated by the Defendant and he had no access to counsel prior to its initiation. Thus, it was impermissible.
Given (1) our standard of review, (2) that the State had the burden of showing by a preponderance of the evidence that the motion to suppress should be denied, (3) that the trial court is presumed to have found all facts in accordance with its ruling, and (4) that if the ruling is plausible, in light of the record viewed, in its entirety, we will not reverse, even if we would have weighed the evidence differently, I believe the order sustaining the motion to suppress is not clearly erroneous. The trial court’s conclusion that the Defendant’s phrase “[c ]olloquially ... more likely indicates that Defendant won’t consent to anything without the benefit of legal counsel” is as plausible as the claim that Defendant was only responding to a specific question about a search warrant. Given the direction from the U.S. Supreme Court that the words of the Defendant should be broadly interpreted, I would affirm the trial court.